IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

ROBERT RAWLINS,                      )
                                     )
              Petitioner,            )
                                     )
vs.                                  )          Criminal No. 2004-154
                                     )          Civil No. 2011-107
UNITED STATES OF AMERICA,            )
                                     )
              Respondent.            )
_____  )

## REPORT AND RECOMMENDATION

Before the Court is *pro se* petitioner Robert Rawlins' ("Rawlins") Motion to Vacate, Set

Aside or Correct Sentence [DE 1053] pursuant to 28 U.S.C. § 2255.  The government filed a

response, to which Rawlins replied. [DEs 1069, 1076].   For the reasons that follow, it is

recommended that Rawlins' motion be denied.

## I.     BACKGROUND

As the parties are familiar with the underlying facts of this case, only those facts relevant

to this discussion will be recited. This matter arises out of a conspiracy among employees at the

Cyril E. King Airport, St. Thomas, United States Virgin Islands, and others, to smuggle cocaine

onto commercial flights bound for the continental United States.  The conspirators included Alric

Thomas ("Thomas"), a cocaine supplier; Dion Brookes ("Brookes"), the station manager for a

small airline called Air Sunshine; and airport baggage handlers Rawlins, Bernard Gabriel, Brent

Donovan ("Donovan"), Meleek Sylvester ("Sylvester"), and Mervin Dorival.[1]  *See United States*

---

[1]       As explained by the Third Circuit Court of Appeals in *United States v. Rawlins*, 606 F.3d 73 (3d Cir. 2010),

        This group employed several methods to move cocaine through the airport.  The method the
        conspirators used most often was what we will refer to for purposes of this opinion as "tag
        switching" or "tag pulling."  The word "tag" refers to the flight tags that airlines affix to checked

*Rawlins v. USA*
Criminal No. 2004-154
Civil No. 2011-107
Page 2

*v. Rawlins*, 606 F.3d 73, 75 (3d Cir. 2010).

A superceding indictment returned on January 13, 2005 charged Rawlins and eleven co-defendants with conspiracy to possess with intent to distribute cocaine and with aiding and abetting possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841 and 846. *Rawlins*, 606 F.3d at 78.  In December 2006, a jury convicted Rawlins on Counts One, Six, Seven, Ten, and Eleven.  *Id*.  "Count Six related to the drugs seized on September 20, 2003; Count Seven to the drugs seized on November 8, 2003; Count Ten to the drugs seized on February 21, 2004; and Count Eleven to the drugs seized on March 10, 2004."  *Id*.  The District Court sentenced Rawlins to a one hundred sixty-two month term of imprisonment, five years supervised release, a $15,000 fine and a $500 special assessment.  [DE 969].

Rawlins appealed his sentence, arguing (1) the superceding indictment was invalid because it failed to specify a proper timeframe for the alleged conspiracy; (2) insufficient evidence of *mens rea* to sustain his convictions on three counts; and (3) the District Court erred by admitting certain packages of cocaine into evidence at trial because the government failed to establish an adequate chain of custody connecting the cocaine seized by authorities and the cocaine tested by government chemists.  *Rawlins*, 606 F.3d at 78, 80, 82.  The Third Circuit Court of Appeals rejected Rawlins' arguments and affirmed his conviction in a judgment dated May 26, 2010.  [DE 1000-2].  Rawlins petitioned for rehearing, which was denied on June 30, 2010, *see USA v. Rawlins*, Court of Appeals Docket No. 08-2948; thus, the judgment became

---

luggage.  All luggage to be loaded onto commercial aircraft requires such a tag.  The switching the conspirators engaged in involved stealing flight tags from legitimately checked bags and affixing those tags to bags containing cocaine.  This method allowed the cocaine to be smuggled into the cargo holds of U.S.-bound commercial airplanes.

*Id*. at 75.

final ninety days later on September 28, 2010. *See Johnson v. United States*, 2013 U.S. Dist. LEXIS 66189, at *7 (D.N.J. May 9, 2013) ("A federal prisoner's conviction becomes final when certiorari is denied or when the time for filing a petition for certiorari expires, which is ninety (90) days from the entry of judgment or denial of a rehearing petition.").[2]   Accordingly, the statutory period during which Rawlins could timely file his petition ended on September 28, 2011. *See Hernandez v. Caldwell*, 225 F.3d 435 (4th Cir. 2000) ("When a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the start of the limitations period.") (quoting *Ross v. Artuz*, 150 F.3d 97, 103 (2d Cir. 1998)).   Rawlins' petition, filed September 27, 2011, is thus timely.

Rawlins raises eight grounds for post-conviction relief.  Seven claims are asserted under the theory of ineffective assistance of trial or appellate counsel.  In the remaining claim, Rawlins argues "actual innocence."  Rawlins also requests the Court to appoint him counsel.

## II.    LEGAL STANDARD

"Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences that are allegedly in violation of the Constitution." *Okereke v. United States*, 307 F.3d 117, 120 (3d Cir. 2002).  Section 2255 allows petitioners to collaterally attack their sentence by moving "the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  The remedy is intended only where "the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974) (internal quotation

---

[2]      *See Clay v. United States*, 537 U.S. 522, 532 (2003) ("[F]or federal criminal defendants who do not file a petition for certiorari with [the Supreme Court of the United States] on direct review, § 2255's one-year limitation period starts to run when the time for seeking such review expires."); Sup Ct. R. 13(1), (3) ("[A] petition for a writ of certiorari . . . is timely when it is filed . . . within 90 days after entry of the judgment [or from the date of the denial of a petition for rehearing]. . . . The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate[.]").

marks omitted); *see also United States v. Addonizio*, 442 U.S. 178, 184 (1979) (explaining "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment").

In order to prevail on a section 2255 motion, a petitioner must show one of the following: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). If the court finds any of these grounds, the court must vacate the judgment, resentence the petitioner, or grant the petitioner a new trial as appropriate. *Id*. § 2255(b).

A section 2255 petition is not a substitute for an appeal. *Hodge v. U.S.*, 554 F.3d 372, 379 (3d Cir. 2009). Thus, the general rule is that a petitioner procedurally defaults on a claim if he "neglected to raise [it] on direct appeal." *Id.* (citation omitted); *Massaro v. United States*, 538 U.S. 500, 504 (2003). However, a petitioner properly raises ineffective assistance of counsel arguments under § 2255 rather than on direct appeal. *See Massaro*, 538 U.S. at 504 (explaining it is "preferable" that such claims be considered on collateral review where the record for such claims may be properly developed); *accord United States v. Garcia*, 2013 U.S. App. LEXIS 5386, at *4 (3d Cir. Mar. 19, 2013) ("It is well-settled that this Court ordinarily does not review claims of ineffective assistance of counsel on direct appeal.") (citing *United States v. Thornton*, 327 F.3d 268, 271 (3d Cir. 2003)).

Moreover, a 2255 petition may not "be used to relitigate matters decided adversely on appeal." *Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1074-75 (3d Cir. 1985) (citation omitted). A court may dismiss a section 2255 motion without holding a hearing where the record shows conclusively that the movant is not entitled to relief. 28 U.S.C. § 2255(b);

*Rawlins v. USA*
Criminal No. 2004-154
Civil No. 2011-107
Page 5

*United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994).  A petitioner's *pro se* pleading is construed liberally.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (explaining the liberal construction accorded a *pro se* litigant's pleadings does not include the rendering of substantive legal advice).

## III.   DISCUSSION[3]

### A.   Ineffective Assistance of Trial Counsel Claims

In order to succeed on an ineffective assistance of trial counsel claim, a petitioner must show (1) counsel's representation was deficient and (2) the deficient performance "prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).[4]  Regarding the "deficient" prong, a petitioner must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  *Id*. at 688-89 ("the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances"); *accord Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. at 688.  As for the prejudice prong, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*.

---

[3]     Rawlins' eight grounds for relief are not addressed sequentially.  Rather, logic dictates that the Court consider the claims in the following order:  (1) ineffective assistance of trial counsel claims (grounds 1-3 and 6); (2) ineffective assistance of appellate counsel claims (grounds 4-5 and 8); and (3) the actual innocence claim (ground 7).

[4]     A court has discretion to dispose of a claim at either prong, as there is no required order to the *Strickland* inquiry.  *Strickland*, 466 U.S. at 697 (explaining a court need not "determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "address both components of the inquiry if the defendant makes an insufficient showing on one").  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Id*.

The petitioner bears the burden of establishing his ineffective assistance of counsel claims by a preponderance of the evidence. *United States v. Serrano*, 798 F. Supp. 2d 634, 641 (E.D. Pa. 2011) (citing *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)). Judicial scrutiny of counsel's performance is highly deferential and a petitioner must overcome a "strong presumption" that counsel's strategy and tactics "fall[] within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Accordingly, "[s]urmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1485 (2010).

1.      *Trial counsel's failure to file a motion to dismiss the indictment for a violation of the Speedy Trial Act (Ground One)*

Rawlins argues his counsel should have sought to dismiss the case based on asserted violations of the Speedy Trial Act, 18 U.S.C. §§ 3161 *et seq*. ("the Act"). Specifically, Rawlins contends the District Court failed to make adequate findings on the record demonstrating its reasoning that continuances granted in Rawlins' case served the "ends of justice" and outweighed the best interests of the public and the defendant in a speedy trial. Because the District Court allegedly neglected to make such findings, contends Rawlins, his counsel should have moved the District Court to dismiss the indictment against him. Rawlins argues his trial counsel's failure to pursue a "dead bang winner" constitutes ineffective assistance.[5] Pet'r's Mem. at 9.

Generally, the Act requires that the trial of a defendant who has been charged in an indictment commence within 70 days of the later of either (1) the indictment's filing date or (2) the defendant's initial appearance. 18 U.S.C. § 3161(c)(1); *United States v. Graves*, 2013 U.S. App. LEXIS 12754, at *4 (3d Cir. June 21, 2013). If the 70 days are exceeded, the indictment must be dismissed. 18 U.S.C. § 3162(a)(2) (explaining the defendant bears the burden of proving

---

[5]      *See United States v. Challoner*, 583 F.3d 745, 749 (10th Cir. 2009) ("A 'dead-bang winner' is an issue which was obvious from the trial record and one which would have resulted in a reversal on appeal.").

a Speedy Trial Act violation).  However, the Act excludes from the 70-day period specified categories of delays, one of which is of particular relevance in this case – delays resulting from a continuance granted by a judge on his or her own motion or at the request of either party in order to serve "the ends of justice."[6]  18 U.S.C. § 3161(h)(7)(A).[7]

The "ends of justice" exclusion "is permissive, rather than automatic, meaning [] the delay will not be excludable under the Act unless the court sets forth its findings (orally or in writing) that the 'ends of justice' are served and outweigh the interests of the defendant and the public in a speedy trial."[8]  *Reid v. United States*, 871 F. Supp. 2d 324, 334 (D. Del. 2012) (citing *Zedner v. United States*, 547 U.S. 489, 498 (2006)); 18 U.S.C. § 3161(h)(7)(A).  The district court must state its reasons for granting an "ends of justice" continuance; however, the statement of reasons need not be made contemporaneously with the order to continue because the Act's "reasons" requirement is satisfied by subsequent memorandum explaining the court's decision. *See United States v. Brooks*, 697 F.2d 517, 522 (3d Cir. 1982).[9]

Here, Rawlins relies solely on his pleadings and fails to identify any orders improperly excluding time from the speedy trial calculation due to the district court's failure to provide a

---

[6]     *See Graves*, 2013 U.S. App. LEXIS 12754, at *5 (explaining the "days on which [excludable] events occurred' are not included 'in making the 70-day calculation'") (alterations in original) (quoting *Gov't of V.I. v. Duberry*, 923 F.2d 317, 320 n.8 (3d Cir. 1991)).

[7]     The Act was amended in 2008, and the "ends of justice" subsection was renumbered from § 3161(h)(8) to § 3161(h)(7).

[8]     The Act lists several factors the district court must consider when making the "ends of justice" assessment required by § 3161(h)(7)(A), including whether the defendant needs reasonable time to obtain counsel, whether counsel needs additional time for effective preparation of the case, and whether delay is necessary to ensure continuity of counsel.  18 U.S.C. § 3161(h)(7)(B)(iv).

[9]     *See United States v. Greer*, 2013 U.S. App. LEXIS 11788, at *14 (3d Cir. June 12, 2013) (explaining this documentation requirement "serves two core purposes: "[i]t both ensures the district court considers the relevant factors and provides [the reviewing] court with an adequate record to review") (alterations in original; citation omitted).

statement of reasons.[10]   Rather, Rawlins implicitly relies on the Court to act as his advocate and scour the record to substantiate his claim.   The Court will not entertain such a request.   *See United States v. George*, 2011 U.S. Dist. LEXIS 124280, at *15 (D.V.I. Oct. 26, 2011) (refusing "to construct, not just liberally construe, [a petitioner's] § 2255 claims").

Moreover, even if the Court assumes, *arguendo*, that Rawlins can show a violation of the Act, and a corresponding failure of performance by counsel, he nonetheless fails to demonstrate prejudice.   In particular, Rawlins has not demonstrated that, but for his trial counsel's unprofessional errors, the district court would have ordered dismissal of the prosecution with prejudice based on a Speedy Trial Act violation, thereby changing the result of the proceeding. *See* 18 U.S.C. § 3162(a)(2) (noting the consequence of failing to make the required "ends of justice" findings is dismissal of the indictment, with or without prejudice); *United States v. McNeil*, 416 Fed. Appx. 227, 229 (3d Cir. 2011) ("Once a defendant establishes a violation of the Speedy Trial Act, the district court must dismiss the indictment . . . with or without prejudice.").

Rawlins argues only that a statutory violation occurred, at which point "the Indictment was ripe for dismissal."   However, "[a] violation of the [Act], by itself, is not a sufficient basis for dismissal with prejudice."   *United States v. Abdush-Shakur*, 465 F.3d 458, 462 (10th Cir. 2006) (alterations added).   Rather, in deciding to dismiss a prosecution with or without prejudice for a Speedy Trial Act violation, courts consider "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the

---

[10]      A review of the docket sheet indicates orders entered on December 9, 2004 [DE 133] and February 1, 2006 [DE 335] provided for the exclusion of time from the speedy trial calculation in the interests of justice; however, the written orders do not include the court's reasoning for its ends of justice findings.      While Rawlins argues in conclusory fashion that the district court simply failed to make the required findings, it is possible findings were made orally in open court at the time these orders were entered, or were made thereafter.   *See United States v. Brooks*, 697 F.2d 517, 522 (3d Cir. 1982) ("The language of the statute [i.e., 18 U.S.C. § 3161(h)] does not specify when the court's findings must be recorded, and the purposes of the statute are satisfied by a subsequent articulation.").

*Rawlins v. USA*
Criminal No. 2004-154
Civil No. 2011-107
Page 9

administration of this chapter . . . and on the administration of justice."  18 U.S.C. § 3162(a)(2);

*accord McNeil*, 416 Fed. Appx. at 229.

Rawlins has not even argued that upon consideration of these factors, his case would require dismissal with prejudice.   *See United States v. Cook*, 48 F. Supp. 2d 776, 777 (N.D. Ill. 1999) (rejecting petitioner's claim that his attorney rendered ineffective assistance of counsel claim by failing to seek a dismissal of the indictment under the Act where petitioner "offer[ed] nothing to indicate his indictment would have been dismissed with prejudice"); *United States v. Rushin*, 642 F.3d 1299, 1309 (10th Cir. 2011) (holding a petitioner failed to establish prejudice where "in all likelihood the [g]overnment would have reindicted [d]efendant, placing him in the same posture as before the dismissal").   Because Rawlins has not shown the result of his proceedings would have been different, he has not shown prejudice. *See Strickland*, 466 U.S. at 697.  Accordingly, the Court RECOMMENDS that this claim be DENIED.

2. *Trial counsel's failure to properly impeach the trial testimony of three witnesses (Ground Two)*

Rawlins contends his trial counsel failed to "properly" impeach three cooperating co-defendants, Brookes, Donovan and Sylvester (collectively, "cooperating witnesses") based on their prior inconsistent statements to federal authorities.[11]  Rawlins claims these statements were available in discovery materials with which trial counsel failed to "fully familiarize[] himself." The alleged discrepancies concern statements about the cocaine smuggling incidents that occurred in September 2003, November 2003 and February 2004.  These incidents form the basis of Rawlins' indictment as to counts six, seven and ten, respectively.  According to Rawlins, had

---

[11]        The statements at issue are found in the following reports (collectively the "Investigative Reports"): (1) a Drug Enforcement Administration ("DEA") report dated August 24, 2004 and (2) three United States Customs Service reports, only one of which is dated (November 10, 2003).  Pet'r's Mem., Exs. 1-2, 4-5 [DEs 1059-1, 1059-2, 1059-3].

trial counsel properly impeached these witnesses, "the jury would have returned a not guilty verdict on the entire Indictment."[12]  Pet'r's Mem. at 13 [DE 1059].

The prior statements and alleged conflicting testimony are as follows:

(i)     Brookes: The DEA investigative report regarding the events of September 20, 2003 states "Brookes related that . . . Sylvester brought two (2) suitcases [filled with cocaine and bound for Philadelphia] to him at his office. Brookes stated that he stashed the suitcases in his office. Brookes advised that Donovan brought baggage tags to him to be placed on the suitcases.  Brookes stated that Donovan removed the suitcases from the office. . . ."  Pet'r's Mem., Ex. 1 ¶ 7 [DE 1059-1] (emphasis omitted).

However, at trial, Brookes testified that he held the bags in his office "until Rawlins delivered the tags that would allow the two bags bound for Philadelphia to be loaded onto the plane."  *Rawlins*, 606 F.3d at 76 n.2 (3d Cir. 2010) (noting Donovan testified that he (Donovan) brought the tags to the office that day but crediting Brookes' testimony that Rawlins did so); *see also* Memorandum and Opinion, Apr. 24, 2008 ("April 2008 Opinion") at 43 [DE 869] (explaining "either R. Rawlins[13] or Donovan took [the two] flight tags to Brookes' office) (citing trial testimony of Donovan and Brookes).

Rawlins argues had Brookes been impeached, the jury would have concluded that Rawlins had "nothing to do with the September, 2003 smuggling attempt."  Pet'r's Mem. at 4.

(ii)    Donovan: On November 8, 2003, federal agents seized cocaine at Newark International Airport from Continental Flight 1902 arriving from St. Thomas.  *See* April 2008 Opinion at 45 [DE 869].  That same day, per an investigative report, a federal agent "received a call from [another agent] regarding the placement of an unknown amount of cocaine in an unknown bag on Continental Flight 1902 leaving from St. Thomas en route to Newark, New Jersey."  Pet'r's Mem., Ex. 4 [DE 1059-2 at 2].

At trial, Donovan testified that on November 8, 2003, he "saw R. Rawlins pull a Continental Airlines flight tag with a destination of Newark, New Jersey from a bag, put this flight tag in his pocket, go toward Brookes' office and return with a blue bag, which he placed on a baggage belt."  *See* April 2008 Opinion at 45 [DE 869] (citing

---

[12]     As noted by the District Court, "[t]he bulk of the Government's evidence [in the underlying matter] consisted of the testimony of four cooperating defendants," including Brookes, Donovan and Sylvester.  *See* Memorandum and Opinion, Apr. 24, 2008, at 4 [DE 869].

[13]     In its orders and memorandum, the District Court distinguished Rawlins' from his co-defendant, Danny Rawlins, by referring to Rawlins' as "R. Rawlins."

Donovan's trial testimony). "Donovan then called Agent Blake, a federal agent with whom he had had contact, and shared his observations." *Id*. (citing trial testimony of Donovan and Agent Blake).

Rawlins argues that the description "unknown bag" implies that Donovan lied about both the color of the bag and seeing Rawlins place tags on it.

(iii)   <u>Sylvester</u>: On March 10, 2004, federal agents again seized a bag containing cocaine at Newark International Airport.  In an investigative report regarding the March 2004 incident, Sylvester informed federal agents that he had switched the tag on the bag containing cocaine with a tag from a bag that had already passed federal inspection. Pet'r's Mem., Ex. 5 [DE 1059-3 at 1].

During Roy Brewley's trial, however, Sylvester testified that the first time he removed any tags from a bag was in August 2004.  Pet'r's Mem., Ex. 6 [DE 1059-4 at 2].

Rawlins simply points out the above inconsistency without further comment.

"Trial counsel has an obligation to 'investigate possible methods for impeaching a prosecution witness, and [the] failure to do so may constitute ineffective assistance of counsel.'" *Alexander v. Shannon*, 163 Fed. Appx. 167, 173 (3d Cir. 2006) (quoting *Tucker v. Ozmint*, 350 F.3d 433, 444 (4th Cir. 2003) (alteration in original)).  Trial transcripts reveal that trial counsel cross-examined Donovan, Sylvester and Brookes on November 9, November 15 and November 16, 2013, respectively.  However, there is no evidence that trial counsel impeached Brookes, Donovan or Sylvester with their prior statements appearing in the Investigative Reports. Assuming, *arguendo*, that counsel's failure to impeach Rawlins' co-defendants with these prior statements was objectively unreasonable, Rawlins nevertheless fails to indicate any prejudice he suffered that would legitimize his claim of ineffective assistance of counsel under *Strickland*.

As Rawlins challenges the conviction itself, he must demonstrate "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695.  Here, Rawlins ignores the incriminating audiotape of a

conversation among himself, Sylvester and Thomas that occurred on August 30, 2004, wherein they discuss their common enterprise, as well as the testimony of Darnell Blake, a federal agent. This evidence overcomes any doubt that might have been raised had trial counsel used the statements in the Investigative Reports for impeachment purposes.

The August 30, 2004 conversation unequivocally demonstrates Rawlins' "knowledge of, intent to agree and participation in the conspiracy."  April 2008 Opinion at 32-33 [DE 869].  As the District Court observed, the conversation

> reflects R. Rawlins' familiarity with past methods of moving cocaine through the airport, which airlines and flight routes could be utilized, and current methods of moving cocaine, that is, that a bag needed to be checked in early and flight tags potentially switched. He told Thomas how many units of cocaine could be moved at one time and that payment in cash was required. . . . His advice to Thomas that "the best day to deal with that de [sic] is on a Wednesday" evidences a history of participating in this drug smuggling operation.

*Id*. at 33 [DE 869].   Even if Brookes and Sylvester had been impeached with their prior statements, no amount of cross-examination could refute the inculpatory August 2004 recording. Moreover, Donovan's statement concerning the bag color was corroborated by Agent Blake's testimony that he (Agent Blake) "contacted agents in Newark and told them of his belief that there was a *blue suitcase* placed on Continental Flight 1902, destination Newark International Airport, that needed to be searched after the airplane landed."  *Id*. at 45 [DE 869] (emphasis added).   Furthermore, Rawlins presents no evidence suggesting Donovan lied about Rawlins placing tags on the bag.  Indeed, the August 2004 recording, which indicates Rawlins' knowledge of moving the cocaine via switching flight tags, provides adequate evidence to support the contention that Rawlins was involved in "tag switching."

Based upon the evidence of guilt that either corroborated the testimony of Rawlins' co-conspirators or existed separate and apart from their testimony, the jury would not have "had a

reasonable doubt respecting guilt" even if the prior statements had been used for impeachment purposes. *Strickland*, 466 U.S. at 695. Accordingly, Rawlins was not prejudiced by trial counsel's alleged failure to impeach Brookes, Donovan or Sylvester. *See Gonzalez-Soberal v. United States*, 244 F.3d 273, 278 (1st Cir. 2001) (noting that "a significant factor weighing in favor of finding prejudice is the absence of any corroborating evidence other than the testimony of [the unimpeached witnesses]"). As such, he does not state a claim for ineffective assistance of counsel, and the Court therefore RECOMMENDS this claim be DENIED.

3.   *Trial counsel's failure to object to the District Court's refusal to consider the disparity between Rawlins and his co-defendants (Ground Three)*

Rawlins contends that his trial counsel was ineffective for failing to object to Rawlins' sentence on the grounds that there was disparity between his sentence and sentences imposed on co-defendants who did not go to trial. Rawlins' claim is premised on the erroneous belief that his sentence violated 18 U.S.C. § 3553(a).

At the outset, the Court notes Rawlins' argument as to trial counsel's performance is belied by the record, which makes clear that trial counsel raised the disparity between Rawlins' sentence and that of his co-defendants during Rawlins' June 30, 2008 sentencing hearing. *See* Sentencing Hr'g Tr. at 45 [DE 939]. In particular, trial counsel argued that in imposing a sentence against Rawlins, the District Court should be guided in part by the sentences imposed against cooperating co-defendants. Trial counsel specifically raised the issue of Sylvester's disparate sentence during Rawlins' sentencing hearing, noting Rawlins' "significantly smaller role[] [in the conspiracy] as compared to [] Sylvester," and arguing the District Court's sentencing of Rawlins should be guided by the sentence imposed against Sylvester. *Id*. The District Court disagreed, limiting counsel's arguments regarding sentencing disparity to those

defendants who went to trial.  *Id.* at 47 (advising counsel that (1) his "argument with respect to people who have cooperated is not helpful;" (2) "the sentences which have been given to [co-defendants] thus far [] were not cooperators;" (3) "[w]hile the Court is not required to consider such comparisons, [it would] permit [counsel] to make them to people who were defendants in the case who went to trial, and not to people who didn't go to trial").

Moreover, even if trial counsel had failed to raise the issue of disparate sentences, Rawlins cannot meet the prejudice requirement of *Strickland*.  "[A] sentence must reflect a district court's meaningful consideration of the factors set forth at 18 U.S.C. § 3553(a)." *United States v. Lessner*, 498 F.3d 185, 203 (3d Cir. 2007).  Among the factors a district court must consider is "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

However, this section is not aimed at disparities between co-defendants in a single case. *See United States v. Henry*, 310 Fed. Appx. 498, 500 (3d Cir. 2009) (stating "a defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences"); *Donaldson v. United States*, 593 F. Supp. 2d 691, 695 (D. Del. 2009) (finding § 3553(a)(6) inapplicable to movant's case because the alleged disparity was between movant and his co-defendant).[14]  Rather, § 3553(a) is concerned with national disparities among

---

[14]    A district court may exercise its discretion and determine a defendant's sentence in light of a co-defendant's sentence.  *See Parker*, 462 F.3d at 277 ("Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so."). Here, however, consideration of the sentencing disparities between Rawlins and his co-defendants was not appropriate because they were not "similarly situated."  *See United States v. Henry*, 310 Fed. Appx. 498, 499 (3d Cir. 2009) (affirming sentence imposed by district court, which included consideration of differences between defendant and his co-defendants, including one co-defendant's "negotiat[ion] [of] a plea agreement that specified the length of his imprisonment); *Parker* at 278 (finding the district court properly "distinguished its reduction of [a co-defendant's] sentence on the grounds that [he] had assisted in convicting his co-defendants.); *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) ("[A] sentencing difference is not a forbidden 'disparity' if it is justified by legitimate considerations, such as rewards for cooperation."); *United States v. Conatser*, 514 F. 3d 508, 522 (6th Cir. 2008) ("Disparities between the sentences of co[-]conspirators can exist for valid reasons, such as differences in criminal histories, the offenses of

defendants with similar criminal backgrounds convicted of similar criminal conduct. *See United States v. Parker*, 462 F.3d 273, 276 (3d Cir. 2006) ("Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case."); *see also United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) ("[T]he kind of 'disparity' with which § 3553(a)(6) is concerned is an unjustified difference across judges (or districts) rather than among defendants to a single case."). Here, Rawlins does not contend that his sentence undermines national uniformity in sentencing but only that it created disparities between himself and his co-defendants. Rawlins' contention is unavailing since "disparate sentences [among co-defendants is] irrelevant to the Section 3553(a) analysis at sentencing." *United States v. Mariscal*, 2010 U.S. Dist. LEXIS 88381, at *8 (N.D. Ohio Aug. 26, 2010).

Despite Rawlins' contention to the contrary, trial counsel raised the issue of disparate sentences. But, even if trial counsel had not done so, Rawlins cannot show prejudice because he was not entitled to have his sentence measured against those of his co-defendants. Accordingly, the Court RECOMMENDS this claim be DENIED.

4.      *Trial counsel's failure to move for a new trial based on perjured testimony (Ground Six)*

On July 16, 2007, trial counsel moved for a new trial on the grounds that it was "required in the interests of justice," and "newly discovered evidence mandates a new trial of this action." [DE 730]. Rawlins now argues trial counsel provided ineffective assistance by failing to also move for a new trial based upon perjured testimony. In particular, Rawlins contends the statements of the cooperating witnesses contained in the Investigative Reports, discussed *supra*,

---

conviction, or one co[-]conspirator's decision to plead guilty and cooperate with the government.").

"unequivocally demonstrate" that Rawlins was not involved in "the smuggling attempts" in September 2003, November 2003 or March 2004.   Accordingly, Rawlins faults counsel for failing to expose the testimony of Brookes, Donovan and Sylvester as perjury.

A fundamental problem with Rawlins' argument is that it is essentially an attempt to recast the sufficiency of the evidence argument that he unsuccessfully raised on appeal.  *See United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (explaining a habeas motion is not the appropriate forum to re-litigate issues previously addressed on direct appeal); *United States v. Michaud*, 925 F.2d 37, 41 (1st Cir. 1991) ("[I]ssues decided on direct appeal may not be relitigated under a different label on collateral review.") (citation omitted); *United States v. Johnson*, 105 F.3d 670 (table), 1997 U.S. App. LEXIS 69, at *4-5 (10th Cir. Jan. 2, 1997) ("We cannot again review this claim simply because it has been recast in the clothing of an ineffective assistance of counsel claim.").  Moreover, Rawlins relies solely on his conclusory assertion that the cooperating witnesses committed perjury.  As explained in greater detail *infra*, however, "mere inconsistencies in testimony fall short of establishing perjury." *Jones v. Kyler*, 2005 U.S. Dist. LEXIS 44502, at *22 (E.D. Pa. Aug. 3, 2005) (quoting *United States v. Thompson*, 117 F.3d 1033, 1035 (7th Cir. 1997)).

Furthermore, even if Rawlins' argument is deemed properly before this Court and Rawlins can demonstrate perjury, Rawlins' argument fails for the reasons described earlier.  In particular, assuming *arguendo* counsel's performance was objectively unreasonable, Rawlins has not established that trial counsel's alleged error "worked to [Rawlins'] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (emphasis in original).  In fact, the evidence presented at trial, including the August 2004 recording, indicates Rawlins' substantial involvement in the cocaine

conspiracy.  As Rawlins has not shown that his defense suffered prejudice as a result of trial counsel's abstention from arguing for a new trial on the basis of perjured testimony, the Court RECOMMENDS this claim be DENIED.  *See Travillion v. United States*, 2012 U.S. Dist. LEXIS 154511, at *20 (W.D. Pa. Oct. 29, 2012) ("The standard for analyzing an ineffective assistance of counsel claim is not to scrutinize counsel in a vacuum; rather, the totality of the circumstances of counsel's assistance must factor into the elements of a *Strickland* analysis, including whether prejudice exists.") (citing *Strickland*, 466 U.S. at 689, 696).

## B.   Ineffective Assistance of Appellate Counsel Claims

The standard for ineffective assistance of appellate counsel is generally the same as for trial counsel.  *See Smith v. Robbins*, 528 U.S. 259, 285 (2000).  When a petitioner contends appellate counsel failed to raise specific issues, a petitioner must show (i) his appellate counsel's representation fell below an objective standard of reasonableness – that is, "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them," *id.*, and (ii) there is a reasonable probability that, if counsel had raised the issue on direct appeal, the result of his appeal "would have been different."  *United States v. Solomon*, 2013 U.S. Dist. LEXIS 31211, at *65 (W.D. Pa. Mar. 7, 2013) (quoting *United States v. Mannino*, 212 F.3d 835, 845 (3d Cir. 2000)).

Focusing on issues most likely to prevail "is the hallmark of effective appellate advocacy."  *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)).  Accordingly, where appellate counsel is charged with ineffectiveness for failure to raise a particular claim, "it is difficult to demonstrate that counsel was incompetent." *Smith*, 528 U.S. at 288.  To overcome the presumption of competence of appellate counsel, a petitioner must show the omitted issues were "clearly stronger" than those counsel chose to

assert.  *Id.* (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)); *Hall v. Bartkowski*, 2013 U.S. Dist. LEXIS 47984, at *11 (D.N.J. Apr. 3, 2013) (citing *Jones v. Barnes*, 463 U.S. 745, 750 (1983) (rejecting "per se rule that appellate counsel must raise every nonfrivolous issue")).

1.      *Appellate counsel's failure to raise the District Court's refusal to consider the disparity between Rawlins and his co-defendants (Ground Four)*

First, Rawlins argues appellate counsel was ineffective because he failed to raise the sentence disparity issue on appeal.  As discussed *supra*, Rawlins contention is based on the erroneous belief that 18 U.S.C. § 3553(a)(6) bars sentence disparities among co-defendants.  However, § 3553(a)(6) does not require the sentencing court to compare the sentences of codefendants; rather, it looks to uniformity on a national scale.  *See Parker*, 462 F.3d at 276.  Thus, Rawlins' appellate counsel had no basis for raising an argument to the contrary.  *See United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) ("Counsel cannot be ineffective for failing to raise meritless claims").  Accordingly, the Court RECOMMENDS Rawlins' fourth claim for relief be DENIED.

2.      *Appellate counsel's failure to argue that the District Court erred in denying Rawlins a minor role reduction (Ground Five)*

Next, Rawlins contends appellate counsel was ineffective for failing to raise on appeal the issue of the District Court's denial of Rawlins' request for a sentence reduction for a minor role in the conspiracy under section 3B1.2 of the United States Sentencing Guidelines ("USSG" or "the Guidelines").

Section 3B1.2 provides for an offense-level reduction if a defendant was a "minor participant." USSG § 3B1.2(b).  The "minor participant" category covers someone who is less culpable than most other participants, but whose role could not be described as minimal.  USSG § 3B1.2 Comment (Note 5).   The record indicates trial counsel sought a downward departure for

*Rawlins v. USA*
Criminal No. 2004-154
Civil No. 2011-107
Page 19

Rawlins' role as a minor offender pursuant to § 3B1.2 of the Guidelines during the June 30, 2008

sentencing hearing.   *See* Sentencing Hr'g Tr. at 34-35 [DE 939].   The District Court found,

however, that Rawlins' role in the conspiracy was not minor.   *Id*. at 35.   In so finding, the District

Court noted that Rawlins had "set up the March 10, 2004 deal," *id*. at 39, and incorporated the

following from its April 2008 Opinion:

> Cooperator testimony established that R. Rawlins pulled flight tags from checked luggage in the baggage room, that he removed unchecked bags containing cocaine that were tagged with flight tags belonging to checked luggage from Brookes' office, and that he asked Sylvester to get in touch with a drug supplier. In addition to the evidence recited above, the court has also considered the evidence presented by the Government relative to the substantive charges on which R. Rawlins was convicted. The Government produced substantial evidence which showed that not only did R. Rawlins have precise knowledge as to the exact modus operandi in place at the airport at any point in time, but that he physically participated in the conspiracy in multiple ways. He pulled flight tags, picked up drug bags from Brookes' office, took bags to Brookes' office for storage and acted as a lookout. Sylvester testified that he took a leave of absence from his employment sometime after he began his transactions with Thomas. Upon Sylvester's return to work, R. Rawlins asked him, on multiple occasions, to get in touch with the cocaine supplier.

> . . . R. Rawlins' statements to Thomas during the August 30, 2004 recorded conversation serve to confirm his knowledge of, intent to agree and participation in the conspiracy. The conversation reflects R. Rawlins' familiarity with past methods of moving cocaine through the airport, which airlines and flight routes could be utilized, and current methods of moving cocaine, that is, that a bag needed to be checked in early and flight tags potentially switched. He told Thomas how many units of cocaine could be moved at one time and that payment in cash was required. R. Rawlins stated that he had worked "something" the previous Wednesday and that it went "straight," from which the jury could infer that cocaine was successfully moved through the airport, onto an airplane, and safely reached its destination on the mainland United States. His advice to Thomas that "the best day to deal with that de is on a Wednesday" evidences a history of participating in this drug smuggling operation. R. Rawlins' statement that "We don't do US" shows that he worked with others to get cocaine onto airplanes and that they no longer, if ever, put cocaine on U.S. Airways flights. He makes it clear that there is a system in place that utilizes the early arrival of passengers at the airport, whose checked luggage will be packed with cocaine in the baggage room or in the belly of the plane to avoid detection by authorities: "But the thing is right, yo got to be early. . . . As early as possible because that

> late thing don't cut it brother. . . . You goin be deh waiting, and it goin be off schedule, off schedule – the thing goin be up deh, and you down here still waiting, and then these man here might just pop out." R. Rawlins' stated plan to work with Thomas in the future in Sylvester's stead is evidence of R. Rawlins' intent to continue his participation in the drug smuggling conspiracy charged.

April 2008 Opinion at 32-33 [DE 869] (internal citations omitted).   Based on the record, Rawlins' role in the conspiracy plainly was not minor.

Moreover, Rawlins has not shown any specific prejudice resulting from his appellate counsel's failure to raise this issue on appeal.   Because Rawlins cannot demonstrate that the outcome of his appeal would have been different if appellate counsel had performed as Rawlins now suggests, Rawlins cannot show prejudice resulting from counsel's conduct.   Absent a demonstration of prejudice, Rawlins cannot prevail on this claim of ineffective assistance of counsel.   *See Strickland*, 466 U.S. at 691-92.   Accordingly, the Court RECOMMENDS this claim be DENIED.

3.   *Appellate counsel's failure to raise the issue of prosecutorial misconduct (Ground Eight)*

Rawlins contends appellate counsel rendered deficient performance by failing to argue the government knowingly committed prosecutorial misconduct by using the perjured testimony of the cooperating witnesses in Rawlins' trial.   Specifically, Rawlins maintains the government "was aware" that the cooperating witnesses' statements in the Investigative Reports conflicted with the trial testimony of these witnesses.

"Federal prosecutors have a special and solemn duty to refrain from improper methods of obtaining a conviction."   *United States v. Morena*, 547 F.3d 191, 193 (3d Cir. 2008).   "Unfortunately, when a prosecutor acts unfairly, there is little a defendant can do other than rely on his or her attorney to lodge an appropriate and timely objection."   *Hodge v. Hurley*, 426 F.3d 368, 377 (6th Cir. 2005).   "A failure to make such an objection can have devastating

consequences for an individual defendant."  *Id.*  Accordingly, "[a] failure to object to prosecutorial misconduct can constitute ineffective assistance of counsel."  *Alexander v. Shannon*, 163 Fed. Appx. 167, 173 (3d Cir. 2006) (citing *Gravley v. Mills*, 87 F.3d 779, 785-86 (6th Cir. 1996)).

"The Supreme Court has long held that the [government's] knowing use of perjured testimony to obtain a conviction violates the Fourteenth Amendment."  *Lambert v. Blackwell*, 387 F.3d 210, 242 (3d Cir. 2004) (alterations added & citations omitted).  In order to sustain a claim of constitutional error under such circumstances, a petitioner must show that a witness actually perjured himself, the government knew or should have known of his perjury,[15] the testimony went uncorrected and there is a "reasonable likelihood that the false testimony . . . affected the judgment of the jury."  *Kyles v. Whitley*, 514 U.S. 419, 433 n.7 (1995); *Lambert*, 387 F.3d at 242.

A witness commits perjury if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  *United States v. Dunnigan*, 507 U.S. 87, 94 (1993).  Accordingly, "testimony offered by a witness that contradicts . . . previous testimony by that witness [] is [generally] insufficient to demonstrate perjury."  *United States v. Edwards*, 2011 U.S. Dist. LEXIS 133405, at *15 (D.V.I. Nov. 18, 2011); *accord Kyler*, 2005 U.S. Dist. LEXIS 44502, at *22.  Furthermore, "[t]he mere presence of inconsistent statements [] does not establish that the prosecutor willfully presented perjured testimony."  *United States v. Mershon*, 2010 U.S. Dist.

---

[15]     *See Kyles v. Whitley*, 514 U.S. 419, 433 n.7 (1995) ("[A] conviction obtained by the knowing use of perjured testimony is fundamentally unfair.") (alteration added);  *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992) (noting it is fundamentally unfair to an accused "when the government, although not soliciting false evidence, allows [such evidence] to go uncorrected when it appears at trial.") (alteration added & citation omitted).

*Rawlins v. USA*
Criminal No. 2004-154
Civil No. 2011-107
Page 22

LEXIS 111042, at *21 (E.D. Pa. Oct. 19, 2010) (alterations added).   As recognized by the Third Circuit, "[t]here are many reasons testimony may be inconsistent; perjury is only one possible reason." *Lambert*, 387 F.3d at 249.

Here, Rawlins presents no evidence of willful intent on the part of the cooperating witnesses.  Rather, Rawlins relies simply on the existence of inconsistent statements and his bald assertion that perjury was committed. *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000) ("Vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.").  "The fact that testimony is inconsistent with or even contradicted by other evidence is not sufficient to sustain a finding of perjury." *Edwards*, 2011 U.S. Dist. LEXIS 133405, at *27.  Nevertheless, even if the cooperating witnesses perjured themselves and the government knew or should have known of this perjury, Rawlins fails to demonstrate that "there is any reasonable likelihood that the false testimony could have affected the verdict."  As detailed above, the government presented evidence of Rawlins' guilt that either corroborated the testimony of Rawlins' co-conspirators or existed separate and apart from their testimony such that the jury would not have "had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695.

Rawlins cannot show a reasonable probability that including this claim in his appellate brief would have had any impact on the result of the appeal.  Absent a demonstration of prejudice, Rawlins cannot prevail on this claim of ineffective assistance of counsel. *See Strickland*, 466 U.S. at 691-92.  Accordingly, the Court RECOMMENDS this claim be DENIED.

## C.   Petitioner is "actually innocent" (Ground Seven)

Rawlins contends he is actually innocent of the charges for which he was convicted. Rawlins maintains his conviction rested on the government's alleged "use of perjured testimony."

A claim of "'actual innocence'" means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).[16] That is, "'actual' innocence . . . means that the person did not commit the crime." *United States v. Garth*, 188 F.3d 99, 107 (3d Cir. 1999) (quoting *Johnson v. Hargett*, 978 F.2d 855, 860 (5th Cir. 1992)). "A litigant must present evidence of innocence so compelling that it undermines the court's confidence in the trial's outcome of conviction; thus, permitting him to argue the merits of his claim." *Johnson v. United States*, 2013 U.S. Dist. LEXIS 33703, at *40 (D.N.J. Mar. 12, 2013). To prevail on a claim of actual innocence, a petition must show: (1) new reliable evidence not available for presentation at the time of the challenged trial; and (2) it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence. *See House v. Bell*, 547 U.S. 518, 537 (2006); *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "[T]he gateway standard for habeas review in claims asserting actual innocence is extremely demanding and permits review only in the 'extraordinary' case." *Johnson*, 2013 U.S. Dist. LEXIS 33703, at *40 (citing *House*, 547 U.S. at 536-37 and *Schlup*, 513 U.S. at 327).

In this case, Rawlins has cited no new reliable evidence in support of his claim of actual innocence. Rather, Rawlins merely challenges the sufficiency of the evidence presented at trial and discussed on appeal. In affirming Rawlins' conviction on appeal, the Third Circuit found that the government presented sufficient evidence regarding Rawlins' participation in the

---

[16]    "Neither the Supreme Court nor our Court of Appeals have decided whether 'actual innocence' is a freestanding, cognizable claim for relief under § 2255." *United States v. Schwartz*, 2013 U.S. Dist. LEXIS 23282, at *74 n.22 (E.D. Pa. Feb. 20, 2013).

*Rawlins v. USA*
Criminal No. 2004-154
Civil No. 2011-107
Page 24

conspiracy as well as acts committed by Rawlins with respect to the various counts under which he was convicted. Moreover, Rawlins has not demonstrated that the testimony upon which the government relied was perjured. As Rawlins' actual innocence claim conflicts with the evidence presented at trial and considered on appeal, the Court RECOMMENDS Rawlins' actual innocence claim be DENIED.

## IV.    CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that Rawlins' Motion to Vacate, Set Aside or Correct Sentence [DE 1053] be DENIED without an evidentiary hearing.[17] It is further recommended that a certificate of appealability be DENIED.[18] The Court also recommends that Rawlins' request for appointment of counsel be DENIED.

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. 28 U.S.C. § 636(b)(1); LRCi 72.3.

**Dated:** August 6, 2013                         S_____

                                                               **RUTH MILLER**
                                                               United States Magistrate Judge

---

[17]    The question of whether to order an evidentiary hearing when considering a motion to vacate a sentence under § 2255 "is committed to the sound discretion of the district court." *Gov't of Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). A § 2255 evidentiary hearing "is unnecessary when the 'files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Padilla-Castro*, 426 Fed. Appx. 60, 63 (3d Cir. 2011) (quoting 28 U.S.C. § 2255(b)). Here, the record in this case conclusively shows that Rawlins is not entitled to relief.

[18]    When a district court issues a final order on a § 2255 motion, it must make a determination whether it will permit a certificate of appealability. 3d Cir. L.A.R. 22.2; Fed. R. App. P. 22(b)(1). A district court will issue a certificate of appealability only upon a finding of a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Here, the record fails to show a violation of Rawlins' constitutional rights. Accordingly, a certificate of appealability should be denied.